IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHEN J. BESPALKO, and
THE UNITED STATES OF AMERICA,
ex.rel.,
         Plaintiffs,

v.                                    CIV No. 99cv1466 WJ/RLP

SANDIA CORPORATION, INC.,
d/b/a/ Sandia National Laboratories,

         Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed December 13, 2004 **(Doc. 68)**. The Court, having considered the motion, briefs of the parties and applicable case law, concludes that the motion is well taken in part and will be granted, but is otherwise denied.

This started out as a *qui tam* or "whistleblower" case under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").[1] Plaintiff brings this suit against his former employer, Sandia Corporation, Inc., alleging that he was harassed and constructively discharged for attempting to

---

[1] The Latin phrase "qui tam" is an abbreviation for "qui tam pro domino rege quam pro se ipso in hac parte sequitur," meaning, "who as well for the king as for himself sues in this matter." The purpose of the False Claims Act "is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government." Ridenour v. Kaiser-Hill Co., L.L.C., 397 F.3d 925, 929 (10th Cir. 2005) (citations to legislative reports omitted). It empowers a private individual (a "relator") to bring a civil claim on his or her own behalf, and on behalf of the Government, against a person or company who knowingly presents a false claim to the Government for payment. 31 USCA § 3730(a), (b).

report the inadequacies of certain programs being developed by Defendants and the efforts of Defendants to conceal those inadequacies.[2]  Count I in the First Amended Complaint, alleging "False Claims Relating to ICADS Project," was voluntarily dismissed without prejudice by Plaintiff.  Doc. 25.  What remains is Plaintiff's claims of retaliation brought under the FCA, and wrongful or retaliatory discharge under state tort law (Counts II and III respectively).[3]

Plaintiff worked at Sandia National Laboratories ("SNL") as a member of technical staff working on a Laboratory Directed Research and Development ("LDRD") project, which was part of a larger program undertaken by SNL for the United States Air Force and funded by the Department of Energy ("DOE").  Plaintiff contends that on December 16, 1998, he sent a letter to the DOE Office of Inspector General which stated that SNL had overcharged the U.S. Air Force under its ICADS contract.  The letter also mentions that Plaintiff provided evidence that ICADS does not work properly, and that certain individuals at SNL misled the Air Force "as to the true technical status of the project."  Pltff's Ex. 2.  Plaintiff alleges that the letter started a barrage of retaliatory actions, particularly by his managers Sam Varnado ("Varnado") and Larry Dalton ("Dalton") that culminated in Plaintiff's constructive discharge.

Plaintiff alleges that the retaliatory conduct took several forms, notably: (1) hostile statements made by Dalton; (2) false accusations of Plaintiff's misuse of timecards and expense voucher fraud; (3) undermining Plaintiff's efforts to seek an extension of his LDRD funding,

---

[2]  Sandia Corporation, Inc. is the sole remaining Defendant in this action.  Defendants Lockheed Martin Corp. and  AT&T Corporation were dismissed upon the Court's approval of a stipulated order of dismissal (Doc. 39).

[3]  The Court recently denied Defendant's motion to dismiss Plaintiff's wrongful discharge claim.  Doc. 83.  The Court rejected Defendant's position that Plaintiff could not assert claims of retaliation under both the False Claims Act and state law.

which was Plaintiff's main research activity, as well as his efforts to solicit funds for additional research in order to assure that Plaintiff's funding did not continue; (4) preventing Plaintiff from returning to a funded staff position on at least three occasions; (5) blocking Plaintiff's transfer in January 2000 because Plaintiff had not completed the "final" version of his earlier LDRD research, conduct which culminated in Plaintiff's constructive discharge.

**Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah) (citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and the dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997).

**I.      Allegations Regarding Hostile Acts, Funding, Job Transfers**

To prevail on a False Claims Act retaliation claim, a plaintiff must show that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct. U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 235 (1st Cir. 2004) (citing McKenzie v. BellSouth Telecomm., Inc., 219 F.3d 508, 514 (6th Cir.2000); Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 186 (3d Cir.2001), cert. denied, 536 U.S. 906 (2002). Once the employee has established a prima facie case of retaliation,

the burden shifts to the employer to prove that the employee would have been terminated or subjected to other adverse action even if he or she had not engaged in the protected conduct. This burden-shifting framework is the same used in Title VII cases where a plaintiff relies on circumstantial evidence to demonstrate employment discrimination, originally set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).[4]

The Court's review of the pleadings, briefing and exhibits has taken into account Defendant's partially justified contentions that Plaintiff's assertions are either unsupported by evidence altogether, or supported by "evidence" which is not appropriate under Rule 56(e). This review has necessarily viewed the admissible facts and other evidence favorably to Plaintiff. As a result, I find that Plaintiff cannot sustain a claim of retaliation based on allegations of hostile statements made by Dalton (allegedly being called an "idiot") and false accusations of Plaintiff's fraudulent use of timecards and expense vouchers. These instances do not constitute adverse actions for purposes of a retaliation claim under the False Claims Act. Increased tension or unpleasant personal relationships do not rise to the level of actionable retaliatory adverse action. See, e.g., Sanchez v. Denver Public Schools, 164 F.3d 527 (10th Cir. 1998); Heno v. Sprint/United Management Co., 208 F.3d 847 (10th Cir.2000) (no adverse action where plaintiff encountered "chilly response" and a transfer was suggested). Also, Plaintiff cannot show any adverse consequences from the investigation that was made into his use of timecards and expense vouchers, since he was reimbursed the amount submitted in the vouchers. Defendant is entitled to summary judgment on Plaintiff's claims of retaliation under both the FCA and wrongful discharge

---

[4] Defendant apparently concedes the first two elements of the FCA claim, since Defendant's argument rests solely on whether Plaintiff suffered an adverse action, and whether Plaintiff has shown a causal connection between the protected activity and any adverse action.

which are based on these allegations.

With regard to Plaintiff's allegations that Defendant undermined Plaintiff's efforts to seek an extension of his LDRD funding when it expired, or his efforts to solicit funds for additional research, and that Defendant prevented Plaintiff from returning to a funded staff position on at least three occasions, these assertions are not backed up by any affidavits or other evidence suitable for summary judgment purposes.  As an example, Plaintiff refers to Exhibit 4h to support his contention that he was prevented from returning to a funded staff position on at least three occasions.  See Response at 27.  Exhibit 4h is merely a "Directed Transfer Request Form," and indicates only that a transfer to a position in Computer Security Technology was scheduled for Plaintiff at the end of January 2000.   Defendant is entitled to summary judgment on claims of retaliation under both the FCA and wrongful discharge which are based on these allegations.

However, it is undisputed that Plaintiff wrote the letter which started this case; that the letter eventually got to upper management at SNL; that funding for Plaintiff's LDRD position had run out at the end of September 1999; and that Plaintiff was scheduled to be transferred to a funded position at the end of January 2000.  Plaintiff alleges that SNL refused to allow his transfer to the funded  position without first completing a final version of his LDRD report, yet would not permit him to complete the Classification Review which he felt was necessary before he could complete the report.  Plaintiff's assertion that his transfer was contingent upon his completion of the LDRD report appears to be undisputed as well.

It is this last alleged instance of retaliation which merits some explanation, as it appears to the Court that it may be the only allegation of retaliation that can withstand summary judgment. According to Plaintiff, the draft report, together with supporting documents, consisted of nearly

5

one hundred pages of extremely technical material. Believing that putting this material into final form might involve working with classified material, Plaintiff wanted to conduct a Classification Review of the material already in his report and any material he would include in the final version. This review would require a trip to Los Angeles to work with the U.S. Air Force, which made the final decisions as to the sensitivity of information used in SNL projects.

Plaintiff contends that Les Shepard, the individual who would be his manager in the new position, obstructed the trip and thus the U.S. Air Force review of Plaintiff's LDRD report. At the same time, Shepard still demanded completion of the report. Plaintiff felt that he was being placed in the impossible situation of either risking an infringement of the classification rules if he continued to work on the report without a Classification Review, or being labeled as insubordinate by continuing to demand the review. Further, Plaintiff attributes SNL's actions as part of its efforts to preclude publication of his results about the ICADS program that could show that claims about the program's capabilities were false.

Defendant contends that Plaintiff could have completed the report without the Classification Review by simply not including potentially sensitive information. Ex. B, 42:4-10. Plaintiff presents evidence which could support his position that the material which SNL wanted in the report was inextricably tied up with the classified material, and had to be extracted for use in the final report in a classified environment and on a classified computer. Ex. 31 at 23; 26-27; 50-52; Ex. 32 at 9, 26. There is also evidence which suggests that a Classification Review was not only appropriate but mandatory. Ex. 32 at 74. Viewing the evidence in a light favorable to Plaintiff, it could be inferred that Defendant was making it difficult for Plaintiff to continue his employment because of the letter written by Plaintiff in December 1998, and because it did not

6

want the program's deficiencies to come to light. Therefore, summary judgment will be denied on Plaintiff's assertions of retaliation in connection with the January 2000 transfer and the Classification Review which Plaintiff contends was blocked by Defendant.

## II.    Constructive Discharge

Plaintiff contends that he was placed in a "catch-22" situation when SNL demanded that he finish the LDRD report before he could be transferred to another funded position, but at the same time prevented him from conducting a Classification Review which Plaintiff claims was required in order to complete the report without violating SNL's rules regarding classified material.

A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign. Pennsylvania State Police v. Suders, 124 S. Ct. 2342, 2351 (2004); Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1367 (10th Cir. 1997). Working conditions must be so severe that the plaintiff simply had no choice but to quit. Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir. 2000); Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1357 (10th Cir. 1997). In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged. "The question is not whether working conditions at the facility were difficult or unpleasant." Rather, a plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship. Yearous, 128 F.3d at 1357.

It is undisputed that Plaintiff never returned to work at SNL after his vacation and sickness/absence leave benefits were exhausted. There is also some evidence that Plaintiff's decision not to return was based on reasons of ill health See Ex. 36. My reaction to Plaintiff's

7

constructive discharge claim is that it is weak.  However, I cannot determine, as a matter of law, whether in these circumstances, Plaintiff's working conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.  See, Exum vs. United States Olympic Committee, 389 F.3d 1130 (10th Cir. 2004) (voluntariness of an employee's resignation must be judged under an objective standard, looking to whether his working conditions were so intolerable that a reasonable employee would have had no other choice but to quit) (citing Yearous, 128 F.3d at 1356).   Plaintiff's constructive discharge claim involves the resolution of facts concerning the reasonableness of Plaintiff's position, and credibility determinations, which should be reserved for a jury.  See Stinnett v. Safeway, Inc., 337 F.3d 1213, 1216 (10th Cir. 2003) (credibility determinations and the weighing of the evidence are jury functions, not those of a judge).   Accordingly, the issue of whether Plaintiff was constructively discharged will proceed to trial.

**III.    State Wrongful (Retaliatory) Discharge Claim**

Plaintiff claims that as a result of Defendant's conduct, his letter of resignation was in reality a constructive discharge.  To state a claim for retaliatory discharge under New Mexico law, a plaintiff must show that: (1) he engaged in protected activity; (2) he was terminated; and (3) a causal connection exists between the alleged protected activity and termination.  Shovelin v. Central New Mexico elec. Co-Op., Incu, 115 N.M. 293, 303 (1993).

Since Plaintiff technically resigned from his position, the viability of this claim hinges on the success of Plaintiff's constructive discharge claim, on which the Court will deny summary

8

judgment for reasons already given.[5]  The same findings regarding an inference of retaliatory motive which the Court has found exists for Plaintiff's retaliation claim under the FCA, apply here.  Therefore, summary judgment will be denied on this claim as well.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 68)** will be DENIED in part and GRANTED in part for reasons given above.

_____
UNITED STATES DISTRICT JUDGE

---

[5] In asserting a state law claim of wrongful or retaliatory discharge, a plaintiff must establish that he was discharged for either of two reasons:  (1)  because he performed an act that public policy has authorized or would encourage; or (2) because he refused to do something required of him by his employer that public policy would condemn.  Shovelin v. Central New Mexico Electrical Cooperative, Inc., 115 N.M. 293, 303 (1993)(quoting Chavez v. Manville Products Corp., 108 N.M. 643, 647 (1989).  "The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'"  Id.  Defendant's position is that Plaintiff resigned voluntarily, and was not discharged.